Joseph Creitz, Cal. Bar No. 169552
Lisa Serebin, Cal. Bar No. 146312
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090
Fax: (415) 513-4475
Email: joe@creitzserebin.com
        lisa@creitzserebin.com

Paul M. Secunda*
* *admitted pro hac vice*
WALCHESKE & LUZI, LLC
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
        psecunda@walcheskeluzi.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. GRUBER, individually, and as representatives of a Class of Participants and Beneficiaries of the Grifols Employee Retirement Savings Plan, <br><br> Plaintiff, <br><br> v. <br><br> GRIFOLS SHARED SERVICES NORTH AMERICA, INC., ET AL. <br><br> Defendants. | Case No: 2:22-cv-02621-SPG-AS <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# Table of Contents

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ..............................................................................................................2

    I.    THE PLEADINGS ...................................................................................................2

    II.   ANSWER, DISCOVERY, NEGOTIATIONS, AND SETTLEMENT ..................................2

    III.  OVERVIEW OF SETTLEMENT TERMS .....................................................................3

        A.   THE SETTLEMENT CLASS .................................................................................3

        B.   MONETARY RELIEF .........................................................................................3

        C.   RELEASE OF CLAIMS .......................................................................................4

        D.   CLASS NOTICE AND SETTLEMENT ADMINISTRATION ..........................................4

        E.   ATTORNEYS' FEES, ADMINISTRATIVE EXPENSES, AND SERVICE AWARDS .............5

ARGUMENT ..................................................................................................................5

I. STANDARD OF REVIEW ...............................................................................................5

II. SETTLEMENT MEETS STANDARD FOR PRELIMINARY APPROVAL ...............................6

        A.   THE CLASS IS ADEQUATELY REPRESENTED .......................................................6

        B.   THE PROPOSAL WAS NEGOTIATED AT ARM'S-LENGTH ........................................7

        C.   THE SETTLEMENT TERMS ARE FAIR AND ADEQUATE .........................................7

            1. The Monetary Relief Is Significant ....................................................7

            2. The Risks, Costs, and Delay of Further Litigation Were Significant ...........8

            3. The Proposed Method of Distributing Relief to The Class Is Effective.........9

            4. The Settlement Imposes a Reasonable Limitation on Attorney's Fees .........9

            5. No Separate Agreements Bear on the Adequacy of Relief to the Class .........9

        D.   THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY .....................................9

III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED ...........10

IV. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ..10

        A.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23(A) ...............................10

        B.   THE PROPOSED CLASS SATISFIES RULE 23(B)(1) ...............................................11

CONCLUSION ..............................................................................................................13

CERTIFICATE OF SERVICE ..........................................................................................14

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Abbott v. Lockheed Martin Corp.*,
  No. 06-cv-701-MJG-DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ------------------------------ 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ----------------------------------------------------------------- 11-12

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  No. 17-cv-00563, Dkt. 211 (May 20, 2020),
  *approved* 2020 WL 6114545  (S.D.N.Y. Oct. 7, 2020) ------------------------------------------- 9

*Beesley v. Int'l Paper Co.*,
  No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014)------------------------------------------ 9

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ------------------------------------------------------------ 6, 7

*Cottle v. Plaid Inc.*,
  240 F.R.D. 356 (N.D. Cal. 2021)--------------------------------------------------------------- 7

*Davis v. Salesforce.com, Inc.*,
  2022 WL 1055557 (9th Cir. Apr. 8, 2022)  ----------------------------------------------------- 8

*Dolins v. Cont'l Cas. Co.*,
  No. 1:16-cv-08898, Dkt. 122-1 (N.D. Ill. Aug. 6, 2018) -------------------------------------- 10

*Foster v. Adams & Assocs., Inc.*,
  2022 WL 425559 (N.D. Cal. Feb. 11, 2022)------------------------------------------------- 7, 10, 14

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982)------------------------------------------------------------------------ 12

*Grabek v. Northrop Grumman Corp.*,
  346 F. App'x 151, 153 (9th Cir. 2009) ------------------------------------------------------- 13

*Harris v. Amgen, Inc.*,
  2016 WL 7626161 (C.D. Cal. Nov. 29, 2016)……………………………………………...14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ----------------------------------------------------------------- 7

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
  2018 WL 2183253 (N.D. Cal. May 11, 2018) ------------------------------------------------- 5

*Kanawi v. Bechtel Corp.,*
    254 F.R.D. 102 (N.D. Cal. 2008)--------------------------------------------------------------- 13-14

*Kinder v. Koch Indus., Inc.,*
    2021 WL 3360130 (N.D. Ga. July 30, 2021) ------------------------------------------------ 10

*Millan v. Cascade Water Servs., Inc.,*
    310 F.R.D. 593 (E.D. Cal. 2015) ------------------------------------------------------------- 7-8

*Munro v. Univ. of S. California,*
    2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) -------------------------------------------- 12

*Neil v. Zell,*
    275 F.R.D. 256 (N.D. Ill. 2011) ------------------------------------------------------------- 11

*Phillips Petrol. Co. v. Shutts,*
    472 U.S. 797 (1985)--------------------------------------------------------------------------- 11

*Price v. Eaton Vance Corp.,*
    No. 18-12098, Dkt. 32 (May 6, 2019),
    *approved* Dkt. 57 (D. Mass. Sept. 24, 2019)--------------------------------------------- 9

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ---------------------------------------------------------------- 7

*Rozo v. Principal Life Ins. Co.,*
    2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ------------------------------------------- 9

*Sacerdote v. New York Univ.,*
    328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd,* 9 F.4th 95 (2d Cir. 2021) ----------------------------------- 9

*Sims v. BB&T Corp.,*
    2019 WL 1995314 (M.D.N.C. May 6, 2019) ------------------------------------------- 9

*Spano v. Boeing Co.,*
    2016 WL 3791123 (N.D. Ill. Mar. 31, 2016) ------------------------------------------- 9

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ---------------------------------------------------------------- 11

*Schuman v. Microchip Tech. Inc.,*
    2020 WL 887944 (N.D. Cal. Feb. 24, 2020)…………………………………………………….14

*Toomey v. Demoulas Super Markets, Inc.,*
    No. 1:19-cv-11633, Dkt. 95 (Mar. 24, 2021),
    *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) ------------------------------------------- 9

iii

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
    2018 WL 8334858 (C.D. Cal. July 30, 2018) ------------------------------------------- 10

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ..................................................................13

*Wildman v. Am. Century Servs., LLC,*
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ----------------------------------------------- 9

RULES

Fed. R. Civ. P. 23(c)(2) --------------------------------------------------------- 13
Fed. R. Civ. P. 23(e) ------------------------------------------------------ 6, 7, 13
Fed. R. Civ. P.23(a) ------------------------------------------------------ 1, 13, 14
Fed. R. Civ. P. 23(b)(1)---------------------------------------------------- 1, 15, 16

TREATISES

MANUAL FOR COMPLEX LITIGATION §§ 21.61–.63, at 308–23 (4th ed. 2004) ------------------------ 6-7

REGULATIONS

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 - 6

iv

# **INTRODUCTION**

Plaintiff William J. Gruber ("Plaintiff") submits, in accordance with the Court's Order of June 9, 2023 (Dkt. 65), this Memorandum in Support of his Motion for Preliminary Approval of the Class Action Settlement with Defendants Grifols Shared Services North America and its Board of Directors ("Defendants"), relating to the management and administration of the Grifols Employee Retirement Savings Plan ("Grifols Plan").[1]

Under the terms of the proposed Settlement, a Gross Settlement Amount of $1.45 million will be paid to resolve the claims of Settlement Class Members who participated in the Plan during the subject period. This is a significant recovery for the Class in relation to the claims that were alleged and falls well within the range of negotiated settlements in similar ERISA cases. There are no other cases that will be affected by this Settlement.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that notice may be disseminated to the class. Among other things:

- The Settlement was negotiated at arm's length;

- The Settlement provides for significant monetary relief that is on par with other settlements;

- The Settlement conveniently provides for automatic distribution of the settlement proceeds to the accounts of current participants in the Plan, while former participants will receive their distribution automatically via check;

- The Released Claims are tailored to the claims that were asserted in the action or could have been asserted based on the same factual predicate;

- The proposed Settlement Class is consistent with Rule 23(a) and Rules 23(b)(1);

- The proposed Settlement Notices provide substantial information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement provides Class Members the opportunity to raise any objections they may have to the Settlement and to appear at the final approval hearing.

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **Exhibit A** to the accompanying Declaration of Paul M. Secunda ("Secunda Decl.").

Accordingly, Plaintiff respectfully requests that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Notice and authorizing distribution to the Settlement Class; (3) certifying the proposed Class; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the accompanying Preliminary Approval Order.

# BACKGROUND

## I. THE PLEADINGS

Plaintiff William J. Gruber filed this action on April 19, 2022. Dkt. 1, alleging that during the putative Class Period (April 19, 2016 through the date of judgment), Defendants, as fiduciaries of the Plan, breached the duties they owed to the Plan, to Plaintiff, and to the other Participants of the Plan by (1) requiring the Plan to pay excessive recordkeeping fees and managed account fees and by failing to remove their high-cost recordkeeper, Fidelity Investments Institutional and their high-cost managed account service provider, Strategic Advisors, Inc.; (2) by offering needlessly expensive investment options in the form of high-cost share classes; and (3) by failing to monitor individuals responsible for Plan administration with regard to recordkeeping, managed account, and investment fees.[2] Defendants answered the Complaint on June 10, 2022. Dkt. 36.

## II. DISCOVERY, MEDIATION, AND SETTLEMENT

After Defendants answered the Complaint, the parties exchange initial disclosures on September 9, 2022, and commenced discovery on September 27, 2022 with Plaintiff serving a first set of discovery requests. In January 2023, Plaintiff received a document production of over 4,250 pages of Plan-related documents.

After reviewing Defendants' document production and engaging in multiple discussions regarding the possibility of mediating the dispute, the parties agreed to mediate the dispute on June 7, 2023, before JAMS Mediator, Robert Meyer.[3] The parties moved the Court to stay the case pending

---

[2] Plaintiff did not pursue an additional failure to disclose claim during settlement negotiations, as this claim did not have a separate monetary value associated with it.

[3] Mediator Meyer has extensive experience mediating similar ERISA class action settlements. *Secunda Decl.* ¶ 10 & *Ex.* B.

private mediation on March 14, 2023, Dkt. 62, and the Court granted the stay on the same date. Dkt. 63.

After a full-day of mediation, in which the parties engaged in extensive arms-length negotiations to resolve the case, a settlement was reached. The parties reduced their agreement into a signed Term Sheet on June 21, 2023, and filed a joint stipulation to further stay the case pending this Motion for Preliminary Approval of Class Settlement. Dkt. 64. The Court granted the stay on June 29, 2023, and instructed Plaintiff to file the Preliminary Approval Motion by August 31, 2023. Dkt. 65.

### III.   OVERVIEW OF SETTLEMENT TERMS

#### A.   The Settlement Class

The Settlement applies to the following Settlement Class:

> All participants and beneficiaries of the Grifols Employee Retirement Savings Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period.

*Settlement* ¶ *E*. No material differences exist between this Class and the Class proposed. Dkt. 1, ¶ 188. As of our current information, under the class definition, there are approximately 70,000 class members, of which we believe approximately 10,000 will be eligible for payout under the Settlement and of which 7363 are current participants. *Secunda Decl.* ¶ 3.

#### B.   Monetary Relief

Under the Settlement, Grifols will contribute $1.45 million to a common settlement fund. Settlement ¶ 12. After accounting for any attorneys' fees and costs, administrative expenses, and case contribution awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members. *Id.* ¶ 16. The Plan of Allocation will be submitted with the Motion for Final Approval of the Class Action Settlement.

After the Court approves this Settlement, Analytics, the selected Settlement Administrator, will calculate the amounts payable to Settlement Class Members. Secunda Decl., ¶ 11. For those Settlement Class Members who have an account in the Plan as of the date of entry of the Final Approval Order (the "Account Members"), the distribution will be made into his or her account in

3

the Plan without need of a claim form. *Id.* This is essentially a form of "direct deposit" for individuals who still have an account. For those Settlement Class Members who no longer have an account in the Plan at the time of the distribution of the share amounts owed to Class Members (the "Non-Account Members"), the distribution will be made in the form of a check automatically from the Settlement Fund by the Settlement Administrator without there being need of a claim form. *Id.* If Class Members who receive a check do not timely cash the check, the Settlement provides that the unclaimed funds will revert to the Plan to defray administrative expenses and benefit class member Plan participants, along with the Plan as a whole.  *Id.*, ¶ 33.  The parties agreed to this because, practically speaking, the amount of the Settlement Fund that reverts due to uncashed checks is typically so small that dividing it *pro rata* among Class Members is not administratively feasible. Accordingly, since the Class Members sued on behalf of the Plan, the Settlement calls for the funds to revert simply to and be used to administer the Plan. *Id.*

**C.**    **Release of Claims**

In exchange for the foregoing relief, upon Complete Settlement Approval, Plaintiff, the Settlement Class Members, and the Plan (by and through the Independent Fiduciary) shall release Defendants and affiliated persons and entities from all claims as described in the Settlement Agreement. *Settlement,* ¶ 7. The Released Claims do not include claims to enforce the Settlement Agreement. *Id.* ¶¶ 10-11. No difference exists between the released claims and the claims in the Complaint.

**D.**    **Settlement Administrator Selection**

Plaintiff obtained multiple competing bids from potential settlement administrators *Secunda Decl.*, ¶ 8. After considering the bids, Analytics Consulting LLC ("Analytics") was retained because it had the lowest cost for the materially same settlement administration services and had much more experience with these types of ERISA fee cases than the other alternative providers.[4] Additionally, over the last three years, Plaintiff's counsel have used Analytics for seven other ERISA class

---

[4] Analytics Consulting, LLC has extensive experience administering similar ERISA class action settlements. *Secunda Decl.* ¶ 33 & *Ex.* C, and has a well-crafted cybersecurity policy. *Id.*, *Ex. D.*

4

settlements and have been highly satisfied with their services and professionalism. *Id.*, ¶ 9.

### E.   Attorneys' Fees, Administrative Expenses, and Service Awards

Pursuant to the Settlement Agreement, Class Counsel and Local Counsel will file with the Court their request for attorneys' fees and cost, settlement administrative expenses, and case contribution awards no later than twenty-eight (28) calendar days prior to the final fairness hearing, and more than two weeks before the Independent Fiduciary files its report. *Settlement* ¶ 25 & Ex. 2. Class members will file objections at least thirty-five (35) days before the Fairness Hearing. *Id.*

Under the Settlement, the requested fees may not exceed one-third of the Gross Settlement Amount and costs may not exceed $50,000. *Id.*, ¶ 22. In addition, the Settlement provides for a case contribution award for the class representative, Mr. Gruber, of up to $10,000, at the Court's discretion. *Id.* ¶ 26.   Mr. Gruber has expended significant time and effort in assisting the prosecution of the litigation, including assisting Class Counsel in helping with discovery, has incurred the risks of becoming and continuing as a litigant, and has assumed the risk that future employers may look unfavorably upon him because he filed suit against his employer. *See Gruber Decl.* ¶¶ 2–3. Finally, the Settlement provides for payment of settlement administrative expenses from the Settlement Fund. *Settlement* ¶¶ 19-20.

### F.   Review by Independent Fiduciary

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plan. *Settlement*, ¶¶ 21, 35(c); *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report at least 14 calendar days before the final fairness hearing, Settlement ¶ 35(c), so it may be considered by the Court. All costs of the Independent Fiduciary will be paid by the Defendants. *Id.* ¶ 21.

### ARGUMENT

## I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *See* MANUAL FOR

COMPLEX LITIGATION §§ 21.61–.63, at 308–23 (4th ed. 2004). First, counsel submit the proposed settlement terms to the court, and the court makes a preliminary fairness evaluation. *Id.* § 21.632. Second, following preliminary approval, class members are provided notice of a fairness hearing, at which time arguments and evidence may be presented in support of, or opposition to, the settlement. *Id.* §§ 21.633–.634. Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2) directs the Court to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Ninth Circuit determined this revision to Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998 F.3d at 1026. For the reasons that follow, preliminary approval of the Settlement should be granted and noticed authorized to the Class.

## II.   **SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL**

### A.   **The Class Is Adequately Represented**

The record reflects that the Settlement Class is adequately represented. Class Counsel are experienced ERISA litigators with a proven track record. *See Secunda Decl.* ¶¶ 17–32. The named Plaintiff is also an adequate class representative, who has diligently pursued this action on behalf of the Class after acknowledging his duties as class representative and providing substantial assistance to Class Counsel in prosecuting this litigation at significant possible reputation harm to himself. *See Gruber Decl.* ¶¶ 2–3. Thus, the interests of the named Plaintiff are "aligned with the interests of the Class Members." *See Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).

**B.** **The Proposal Was Negotiated at Arm's-Length**

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Therefore, the Court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining or the product of collusion or fraud. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

Here, there is no evidence of collusion under the factors announced by the Ninth Circuit. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011). First, there is no evidence of class counsel receiving a disproportionate distribution of the Settlement, as Class Counsel is seeking up to one-third of the Settlement Fund consistent with the norm for these types of ERISA cases and with their own contingency agreement with the named Plaintiff. *See Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) ("33.3% recovery is on par with settlements in other complex ERISA class actions.") (collecting cases).

In addition, although Defendants are not objecting to this preliminary motion for class action settlement approval, this settlement is not a settlement under which a clear sailing agreement may be seen as collusive because it is not a claims-made settlement. *See Millan*, 310 F.R.D. at 612. The settlement funds are either credited automatically to current participant's accounts or are sent to former participants automatically by check, without any need to file a claim. *Settlement*, ¶¶ 31-32. Thus any reversion is limited to uncashed checks. Further, the unclaimed funds revert to the Plan itself for use in administering the Plan. *Id.* ¶ 33. Finally, the settlement was fashioned only after a full-day, arms-length mediation with a nationally-renowned JAMS mediator, Robert Meyer.

**C.** **The Settlement Terms Are Fair and Adequate**

**1.** **The Monetary Relief Is Significant**

The proposed Settlement Amount is $1,450,000. *Settlement* ¶ 12. Class counsel secured this amount through serious and informed mediation with Mediator Meyer,  which led to a Settlement that provides significant benefits to the Class. Based on Plaintiff's initial estimates, he values the claims as:

1) Excessive RKA fee claim:  $3,494,187

---

7

2)   Excessive Managed Account fees claim:  $3,791,525.[5]

Thus, as of June 2023, Plaintiff's total estimated loss was $7,285,712. *See Secunda Decl.*, ¶4.

The $1,450,000 settlement amount represents 20% of the total estimated losses. Indeed, this percentage is better than most similarly settled ERISA class actions alleging similar claim.[6]

### 2.   The Risks, Costs, and Delay of Further Litigation Were Significant

In the absence of a settlement, Plaintiff would have faced potential risks. At the time of settlement, the parties were planning to start a long, arduous, and expensive discovery process. At the end of discovery, there was a risk that the Court might have dismissed the claims on summary judgment. If the case proceeded to trial, Defendants still might have prevailed at trial or on appeal.[7] Finally, even if Plaintiff prevailed on liability, issues regarding loss would have remained.

At a minimum, continuing the litigation would have resulted in complex and costly proceedings, and significantly delayed any relief to the Class. ERISA cases such as this can extend up to a decade before final resolution, sometimes going through multiple appeals.[8] The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement.  None of this is to say that Plaintiff lacked confidence in his claims. However, given the risks and costs of

---

[5] Because the share-class claim was relatively small in comparison to the other claims, the parties decided not to consider it for purposes of mediation. The duty to monitor claims on the other-hand are largely duplicative of the recordkeeping and managed account claims.

[6] *See, e.g., Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, Dkt. 211 (May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, Dkt. 32 at 12 (May 6, 2019), *approved* Dkt. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses).

[7] The following cases in this and the next footnote provide evidence of litigation outcomes in comparable cases. *See, e.g., Rozo v. Principal Life Ins. Co.*, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

[8] *See, e.g., Spano v. Boeing Co.*, 2016 WL 3791123, at *1, 4 (N.D. Ill. Mar. 31, 2016) (9 years); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (8.5 years); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014) (more than 7 years).

8

litigation, it was reasonable for Plaintiff to reach a settlement on these terms, especially when the settlement amounted to 20% of his and the proposed classes' estimated losses.

### 3.      The Proposed Method of Distributing Relief to The Class Is Effective

Consistent with numerous other ERISA settlements that have received court approval,[9] current Participants will have their Plan accounts automatically credited with their share of the Settlement, and former Participants will receive their share by check. *See supra* at 3-4. Indeed, the $1.45 million Settlement is structured such that the funds will be paid for current participants through the Plan, preserving the tax advantages and without any class member having to complete a claim form, *accord Foster*, 2022 WL 425559, at *10, making this method of distribution efficient.

### 4.      The Settlement Imposes a Reasonable Limitation on Attorney's Fees

The amount of any fee award is reserved to the Court in its discretion. *Settlement* ¶ 22. As discussed above, Class Counsel have agreed to limit their request to no more than one-third of the settlement amount.

### 5.      No Separate Agreements Bear on the Adequacy of Relief to the Class

There are no side agreements relating to the Settlement. *Settlement* ¶ 43.

### D.      The Settlement Treats Class Members Equitably

Finally, the Settlement treats Class members equitably. As noted above, the Settlement Amount will be allocated among eligible Class Members on a *pro rata* basis, the same allocation formula is used to calculate settlement payments for all eligible Class Members, former and current, and that formula is tailored to the claims asserted in the case. Such an approach has been approved in similar circumstances, *see, e.g., Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018), and the proportionate distribution of Settlement payments does not grant preferential treatment to the class representative.

---

[9] *See, e.g., Kinder v. Koch Indus., Inc.*, 2021 WL 3360130, at *1–2 (N.D. Ga. July 30, 2021); *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *2 (S.D. Ohio Feb. 18, 2021); *Dolins v. Cont'l Cas. Co.*, No. 1:16-cv-08898, Dkt. 122-1 § 9 (N.D. Ill. Aug. 6, 2018).

*Gruber v. Grifols Shared Services*      MEMO OF LAW – PLAINTIFF'S MOT. PRELIM. APP.      Case No. 2:22-cv-02621-SPG-AS

### III.     The Class Notice Plan is Reasonable and Should be Approved

The Court also must ensure that Notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

That is precisely the type of Notice proposed here. The individually mailed Settlement Notices are a presumptively-reasonable method. *See Phillips Petrol. Co. v. Shutts,* 472 U.S. 797, 812 (1985). Moreover, the content of the Notice is reasonable, as it contains information regarding the terms of the Settlement, the claims asserted in the action, the definition of the class, the scope of the class release, the process for making an objection, Class members' right to appear at the fairness hearing, and the proposed attorneys' fees, expenses, and service awards. Ex. 2 to Settlement Agreement (Proposed Class Notice). Analytics' procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; and crisis response) meets the cybersecurity needs of the Class. *Secunda Decl., Ex. D.*  In short, the parties have an effective distribution plan and have a Notice that will apprise class members of the Settlement.

### IV.     The Proposed Class Should be Certified for Settlement Purposes

Finally, this Court should certify the Settlement Class for settlement purposes.[10] ERISA class actions are commonly certified under Rule 23 because ERISA breach of fiduciary duty claims are brought on behalf of the plan as a whole. *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011).

#### A.      The Proposed Settlement Class Satisfies Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 620.

***Numerosity.*** As noted above, as of our current information, under the class definition, there

---

[10] In the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

are approximately 70,000 class members, of which we believe approximately 10,000 will be eligible for payout under the Settlement and of which 7363 are current participants. *Secunda Decl. ¶ 3*. This far exceeds the threshold for numerosity.

**Commonality.** The commonality requirement is met where class proceedings would answer questions common to all class members regarding the centralized administration of the plan. *See Munro v. Univ. of S. California*, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 20, 2019). Here, as in other ERISA cases, common questions exist involving (1) whether the Plan's RKA fees and managed account fees were excessive; (2) whether Defendants breached their fiduciary duties to the Plan; and (3) whether the Plan suffered losses from the fiduciary breaches. Accordingly, commonality is satisfied. *See Munro*, 2019 WL 7842551, at *4.

**Typicality.** The typicality requirement "tend[s] to merge" with commonality. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent members; they need not be substantially identical." *Munro*, 2019 WL 7842551, at *4. Typicality is satisfied, as one course of conduct occurred: Defendants' management of Plan. *Munro*, 2019 WL 7842551, at *5.

**Adequacy.** The adequate representation inquiry considers the adequacy of the named plaintiffs and class counsel. The adequacy of representation requirement set forth in Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The Class representative and class counsel are adequate for reasons already elaborated upon above.

**B.     The Proposed Class Satisfies Rule 23(b)(1)**

Plaintiff maintains that certification of the proposed Settlement Class under Federal Rule of Civil Procedure 23(b)(1) is appropriate. Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

(A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

11

(B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Satisfaction of either prong makes certification under the Rule proper.

"Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal 2008). Rule 23(b)(1)(A) is met because Plaintiff alleges that more than individuals are participants of the Grifols Plan. *Secunda Decl., ¶ 3.* If each individual participant filed suit against Defendants based on the same alleged misconduct, this would create a high risk of "incompatible standards of conduct" for Defendants absent certification. *See Kanawi*, 254 F.R.D. at 111. As an example, consider Plaintiff's RKA claim. Every Class Member paid a recordkeeping fee, so each one would have the same claim. Without certification of a non-opt out class, Defendants could face hundreds, or possibly over a thousand, identical single plaintiff lawsuits with each being adjudicated in different forums be different jurists.

Certification under Rule 23(b)(1)(B) is equally appropriate. The legal conclusions and remedies awarded (if any) in claims such as those at the bar affect the entire Plan. Looking again at the RKA claim example, if the Court held that the fee was excessive and must be lowered Defendants would be required to take those remedial actions for all participants and their beneficiaries, not just the named Plaintiff. This fits squarely within the "'[c]lassic example' of a Rule 23(b)(1)(B) action," as it "charg[es] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries." *See Grabek v. Northrop Grumman Corp.*, 346 F. App'x 151, 153 (9th Cir. 2009).[11]

---

[11] Certification under Rule 23(b)(3) is inappropriate because it is a class device reserved for individualized *monetary* relief, and, in this case, only appropriate *equitable* relief is sought under ERISA Section 502(a)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362–63 (2011) ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3) . . . . When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute.").

Because of this dynamic, certification under both prongs of Rule 23(b)(1) is appropriate in this case because ERISA fiduciaries are being alleged to have failed to provide reasonable, uniform standards to a large number of beneficiaries which could lead either to inconsistent adjudications or prejudice to the Defendants. *See Schuman v. Microchip Tech. Inc.*, 2020 WL 887944, at *9 (N.D. Cal. Feb. 24, 2020); *see also Foster*, 2019 WL 4305538, at *2 ("Certification under 23(b)(1) is typical for ERISA class actions.") (citing *Harris v. Amgen, Inc.*, 2016 WL 7626161, at *4 (C.D. Cal. Nov. 29, 2016); *Kanawi.*, 254 F.R.D. at 111). The Court should, therefore, certify this case under Rule 23(b)(1).

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the parties' Class Action Settlement Agreement; (2) approve the proposed Settlement Notice and authorize distribution of the Notice to the Settlement Class; (3) preliminarily certify the Settlement Class for settlement purposes; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

Dated this 31st day of August, 2023

**WALCHESKE & LUZI, LLC**

s/ Paul M. Secunda

Paul M. Secunda*
* admitted pro hac vice
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: psecunda@walcheskeluzi.com

Joseph Creitz, Cal. Bar No. 169552
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090
Fax: (415) 513-4475
Email: joe@creitzserebin.com

ATTORNEYS FOR PLAINTIFF AND
PROPOSED CLASS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated:  August 31, 2023

*/s/ Paul M. Secunda*
Paul M. Secunda

*Gruber v. Grifols Shared Services*      MEMO OF LAW – PLAINTIFF'S MOT. PRELIM. APP.      Case No. 2:22-cv-02621-SPG-AS