JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRUBER, individually, and as representative of a Class of Participants and Beneficiaries of the Grifols Employee Retirement Savings Plan,<br><br>              Plaintiff,<br><br>v.<br><br>GRIFOLS SHARED SERVICES NORTH AMERICA, INC., ET AL.,<br><br>              Defendants. | Case No. 2:22-cv-02621-SPG-AS<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS [ECF NOS. 80, 83]** |

Before the Court are Plaintiff William J. Gruber's (Plaintiff) unopposed Motion for Final Approval of Class Action Settlement Agreement (ECF No. 85 ("Motion for Final Approval" or "Final Approval Motion")) and unopposed Motion for Attorney Fees and Costs, Settlement Administrative Expenses, and a Case Contribution Award (ECF No. 81 ("Motion for Attorney Fees" or "Fees Motion")). Having considered the submissions of the parties, the relevant law, the record in this case, and the arguments of counsel during the final fairness hearing, the Court hereby GRANTS Plaintiff's Motions.

I.    **BACKGROUND**

   A.    **Factual and Procedural Background**

   The Court previously set forth Plaintiffs' allegations in its Order Granting, In Part, and Denying, In Part, Plaintiff's Motion for Preliminary Approval of Class Action Settlement, (ECF No. 74 ("Preliminary Approval Order" or "Prelim. Order") at 2), which the Court incorporates by reference in the instant order.

   As alleged in Plaintiff's Complaint, (ECF No. 1 ("Complaint")), Defendant Grifols Shared Services North America, Inc. ("Defendant") provides its employees, including Plaintiff, with a Section 401(k) "defined contribution" pension plan (the "Plan"). (Compl. ¶ 29). In its role as Plan administrator, Defendant was and is a fiduciary with the responsibility and discretionary authority to control the Plan's operation, management, and administration. (*Id.* ¶ 27). In 2020, the Plan had assets in the amount of approximately $1,035,952,055. (*Id.* ¶ 30). Although this large sum of assets endowed Defendant with substantial bargaining power regarding Plan fees and expenses, Defendant failed to properly exercise that power. (*Id.*). Specifically, when Defendant engaged Fidelity Investments Institutional ("Fidelity") to provide recordkeeping and administrative ("RKA") services for the Plan, Defendant accepted RKA fees that were higher than they should have been, resulting in lost Plan income to participants. (*Id.* ¶¶ 50–63, 89–95). Additionally, when contracting with Fidelity for certain managed account services, Defendant failed to solicit competing bids or periodically negotiate managed account service fee rates, leading Plan participants to pay excessive fees for these services. (*Id.* ¶¶ 70–88). Plaintiff alleges that this conduct constituted a breach of Defendant's fiduciary duties and caused Plan participants to lose retirement account funds. (*Id.* ¶¶ 88, 186, 210, 223, 233).

   On April 19, 2022, Plaintiff initiated this lawsuit in federal court, asserting six causes of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Compl.). The parties began settlement discussions relatively early, shortly after discovery had begun in earnest; the settlement efforts included a private mediation on

June 7, 2023.  (ECF No. 67 ¶¶ 8–11).  On August 31, 2023, Plaintiff filed an unopposed Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 66).   On October 17, 2023, while the Motion for Preliminary Approval was pending, the parties filed a Notice of Amendment to Settlement Agreement with the Court.  (ECF No. 73).  The Court granted the Motion for Preliminary Approval in part on November 2, 2023, in its Preliminary Approval Order.  Specifically, the Court (1) conditionally certified the class as defined in the settlement agreement; (2) appointed Plaintiff as class representative; (3) appointed Creitz & Serebin LLP and Walcheske & Luzi, LLC as class counsel; (4) appointed Analytics Consulting LLC as the Settlement Administrator; and (5) preliminarily approved the proposed Settlement Agreement, including the Notice Plan and Plan of Allocation.  (Prelim. Order at 18).  On February 14, 2024, Plaintiff submitted the Final Approval Motion and Motion for Attorney Fees; Defendant does not oppose.

### B.    The Settlement Agreement

The parties have not re-submitted the Settlement Agreement or represented that the Settlement Agreement has changed in any respect since the parties' October 2023 Notice of Amendment to Settlement Agreement.  While the Court's Order granting preliminary approval set forth the relevant terms of the Settlement Agreement, (Prelim. Order at 3–5), the Court reiterates the key provisions here.

#### 1.    Class Definition

The Settlement Agreements defines the putative class as "[a]ll participants and beneficiaries of the Grifols Employee Retirement Savings Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period." (ECF No. 67-1 ("Settlement Agreement") § E).  The Settlement Agreement defines the "Class Period" as "April 19, 2016, through the date of preliminary approval of the settlement." (*Id.*).

2.    <u>Requested Relief</u>

The Settlement Agreement proposes a settlement amount of $1,475,000.[1] (*Id.* ¶ 12). Of that total, $100,000 was to be paid by Defendant into a non-interest-bearing account insured by the Federal Deposit Insurance Corporation (the "Settlement Account") within sixty business days after the Preliminary Approval Order or after Defendants received the relevant account information and instructions, whichever was later.    (Settlement Agreement ¶ 13).  This amount is to be used to cover initial administrative expenses and the costs of sending notice to class members.  (*Id.*).

The Settlement Agreement provides that the remaining $1,375,000 is to be paid into the Settlement Account within thirty calendar days of the Court granting final approval. (*Id.* ¶ 14).  Under the agreement, all settlement proceeds deposited into the Settlement Account are to be used first for (i) settlement administration expenses; (ii) attorneys' fees and costs; and (iii) Plaintiff's case-contribution award; with the balance to be paid to class members pursuant to a Plan of Allocation.  (*Id.* ¶¶ 16, 29–32).  Class members who still have Plan accounts ("Account Members") will receive a distribution directly into their Plan account.  (*Id.* ¶ 31).  Class members who no longer have a Plan account ("Non-Account Members") will receive a check, except for Non-Account Members who would otherwise be entitled to less than twenty-five dollars under the Plan of Allocation—such individuals receive no payment under the Settlement Agreement.  (*Id.* ¶ 32).

The Settlement Agreement also contains an integration clause that incorporates by reference certain attached exhibits, including the parties' notice of preliminary approval to class members.  The parties' notice creates an apparent ambiguity regarding the relief to which Non-Account Members are entitled: the parties' notice does not indicate any floor

---

[1] The Court is in receipt of the Notice of Amendment to Proposed Attorney Fees and Final Approval of Settlement Orders, (ECF No. 91 (the "Notice")), notifying the Court of certain clerical errors in the proposed orders submitted with the Motion for Final Approval and Motion for Attorney Fees, as well as the Motion for Final Approval itself.  In light of the Notice, the Court understands that Plaintiff seeks approval of the settlement amount specified in the Settlement Agreement.  (*Id.* at 2).

Non-Account Members must meet prior to receiving payment. (ECF No. 67-3 at 4 ("If you are a former Plan participant without a Plan account, a check in the amount of your share of the Settlement Fund will be issued to you in due course once the Settlement has received final approval and/or after any appeals have been resolved in favor of the Settlement.")). It also represents that unclaimed funds will be paid to the Plan to help defray administrative expenses and fees. (*Id.*).

### 3. Attorneys' Fees and Costs

The Court appointed Walcheske & Luzi, LLC and Creitz & Serebin, LLP as Class Counsel in its order granting preliminary approval. (Prelim. Order at 18). The Settlement Agreement permits Class Counsel to apply to the Court for reasonable attorneys' fees and expenses not to exceed $491,667 in attorneys' fees. (Settlement Agreement ¶ 22). This amounts to one-third, or 33.33%, of the total settlement value. The Settlement Agreement also permits Class Counsel to seek up to $50,000 in costs. (*Id.*). At hearing, the parties confirmed that any unused funds remaining from the $100,000 portion of the settlement allotted for initial administrative and notice-related costs, *see* (*id.* ¶ 13), shall revert to the settlement fund for distribution to class members. In his Motion for Attorney Fees, Plaintiff seeks $362,500 in attorneys' fees, $32,879.62 in litigation costs, and $53,361 in settlement administration expenses. (Fees Mot. at 9).

### 4. Release of Claims

As amended by the parties' October 2023 Notice of Amendment to Settlement Agreement, Settlement Agreement requires class members to release:

> any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, remedies, attorneys' fees, expenses, costs, and causes of action, whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual or representative capacity whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen that occurred prior to or during the Class Period only, that:

7.1    Are based on the facts alleged in the Complaint of the Action, specifically, that the Defendants breached their fiduciary duties of prudence and loyalty in connection with: (a) the selection, retention and monitoring of the investment options available in the Plan; (b) the appointment or monitoring of the Plan's fiduciaries and service providers; and (c) the recordkeeping fees, managed account services fees, administrative fees and expenses incurred by the Plan;

7.2    Would be barred by the principles of res judicata or collateral estoppel had the claims asserted in the operative complaint of the Class Action been fully litigated . . . ;

7.3    Relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Settlement Fund pursuant to the Plan of Allocation . . . ;

7.4    Relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone;

7.5    Seek attorneys' fees and costs related to the Action in addition to the Attorneys' Fees and Costs; or

7.6    Constitute individual claims asserted or that could have been asserted by the Class Representatives or Members for alleged losses in their individual accounts prior to or during the Class Period based on the facts alleged in the operative complaint in the Class Action.

(ECF No. 73-1 at 1).   The Settlement Agreement specifically excludes "claims of individual denial of benefits under ERISA § 502(a)(1)(B) other than claims for benefits under the Plan prior to or during the Class Period based on the facts alleged in the operative complaint in the Class Action."   (*Id.* at 1–2).   Additionally, the Settlement Agreement provides that "[a]ll of the Released Claims and releases and covenants not to sue stated in

the preceding sections 7-10 are limited to claims based on the identical factual predicate of the Complaint in the Action." (*Id.* at 2).

## II.    LEGAL STANDARD

### A.    Final Approval of Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997). When deciding whether to grant final approval of a class action settlement, a court's threshold task is to "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure," namely: "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In considering such a request in the settlement context, the court must give the Rule 23 certification factors "undiluted, even heightened, attention." *Amchem Prods*, 521 U.S. at 620.

### B.    Final Approval of Class Settlement

Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements . . . ." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation, alteration marks, and citation omitted). A district court must examine the settlement for "overall fairness." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (en banc). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Id. See also Hanlon*, 150 F.3d at 1026. In the Ninth Circuit, there is a "strong judicial policy that favors settlements." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation omitted).

### III.    CLASS CERTIFICATION

Final approval of a class action settlement requires an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon*, 150 F.3d at 1019–22.  Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on November 2, 2023, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.  *See* (Prelim. Order at 6–10).  *See also Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023).

### IV.    FAIRNESS DETERMINATION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Final approval of a class action settlement may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–20 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)).

Congress and the Supreme Court amended Rule 23(e) in 2018 "to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'"  *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).  Specifically, Rule 23(e)(2) now provides the following:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately
represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing
> relief to the class, including the method of processing class-
> member claims;

> (iii) the terms of any proposed award of attorney's fees, including
> timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3);
> and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). *See also Briseño*, 998 F.3d at 1023–24. Particularly where the
parties settle prior to formal class certification, courts take particular care to ensure that, as
required by Rule 23(e)(2)(B), the parties reached their settlement through arms-length
negotiation rather than "fraud[,] or overreaching by, or collusion between, the negotiating
parties." *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615,
625 (9th Cir. 1982). *See also In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935,
948 (9th Cir. 2011).

Additionally, in the Ninth Circuit, a district court examining whether a proposed
settlement comports with Rule 23(e)(2) is guided by the following non-exhaustive list of
factors, "the relative degree of importance" of which will depend on the "unique facts and
circumstances presented by each individual case." *Officers for Just.*, 688 F.2d at 625.
Those factors are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and
> likely duration of further litigation; (3) the risk of maintaining class action
> status throughout the trial; (4) the amount offered in settlement; (5) the extent

1    of discovery completed and the stage of the proceedings; (6) the experience

2    and views of counsel; (7) the presence of a governmental participant; and (8)

3    the reaction of the class members [to] the proposed settlement.

4    *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citation omitted) (the "*Churchill*

5    factors"). *See also Briseño*, 998 F.3d at 1025–26 (recognizing that while most factors "fall

6    within the ambit of the revised Rule 23(e)," "Congress provided district courts with new

7    instructions—such as analyzing the 'terms of the settlement' and 'terms of any proposed

8    award of attorney's fees'—that require them to go beyond our precedent").

9    **A.    Rule 23(e)(2)(B): Arm's-Length Negotiation**

10    The Court begins its analysis with the second Rule 23(e)(2) factor, which requires

11    that the proposed settlement have been negotiated at "arm's length."   Fed. R. Civ.

12    P. 23(e)(2)(B).  When, as here, the parties negotiate a settlement agreement before a class

13    has been certified, the court must "undertake an additional search for more subtle signs that

14    class counsel have allowed pursuit of their own self-interests and that of certain class

15    members to infect the negotiations."  *In re Volkswagen*, 895 F.3d 597, 610–11 (9th Cir.

16    2018) (internal quotation marks and citation omitted).   Three "oft-cited 'red flags'" of

17    unfair settlements are: (1) when class counsel receives a disproportionate amount of the

18    settlement or is "amply rewarded" while class members receive no monetary relief;

19    (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of

20    attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for

21    fees not awarded to revert to defendants rather than be added to the class fund."  *In re*

22    *Bluetooth*, 654 F.3d at 947 (citation omitted).  *See also Botonis v. Bimbo Bakeries USA,*

23    *Inc.*, No. 2:22-cv-01453-DJC-DB, 2024 WL 100545, at *7 (E.D. Cal. Jan. 9, 2024).  .

24    In the Preliminary Approval Order, this Court focused on the parties' negotiating

25    process, including a full-day mediation between the parties. (Prelim. Order at 11–12).  On

26    further review, the Court notes that, although the parties have not arranged for Class

27    Counsel to be paid "separate and apart" from the class, *In re Bluetooth*, 654 F.3d at 947,

28    the Settlement Agreement contains a type of "clear sailing arrangement" by which

Defendant has "agreed not to challenge the agreed-upon fees for class counsel," *Briseño*, 998 F.3d at 1026. "When faced with a clear sailing provision, courts . . . have a heightened duty to peer into the provision and scrutinize closely the relationship between attorney's fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." *Id.* at 1027 (internal quotation marks and citation omitted). Here, the Settlement Agreement provides that "Defendants shall take no position directly or indirectly on Class Counsel's application for attorneys' fees and expenses," so long as the application comports with the Settlement Agreement's allowance for an application of up to 33.33% of the total Settlement Amount. (Settlement Agreement ¶ 22).

The parties' notice to class members also provides that checks sent to Non-Account Members "will expire and become void not later than 120 days after they are issued, if they have not been cashed" and that "[a]ny portion of the Settlement Fund remaining after distributions to Class Members, including costs and taxes, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan." (ECF No. 67-3 at 4). During the hearing, the parties clarified that this provision does not function as a "kicker" or "reverter" by which "all fees not awarded would revert to [the] defendant[] rather than be added to the *cy pres* fund or otherwise benefit the class." *In re Bluetooth*, 654 F.3d at 947. Instead, unclaimed settlement funds are to be distributed to the Plan for administrative expenses otherwise paid by Account Members; the funds do not return to Defendant.

Considering the Settlement Agreement, the Court finds Settlement Agreement is procedurally fair. First, the Settlement Agreement does not provide a disproportionate distribution of the settlement. The Settlement Agreement allows Class Counsel to seek up one-third of the total settlement value. (Settlement Agreement ¶ 22). "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Razo v. AT&T Mobility Servs., LLC*, No. 1:20-cv-0172 JLT HBK, 2022 WL 4586229, at *10 (E.D. Cal. Sept. 29, 2022) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). Although the Court previously expressed concerns about this provision, (Prelim. Order at 16), the Court does not find that

1  this clause, standing alone, is evidence of collusion.  *See, e.g.*, *Lim v. Transforce, Inc.*, No.

2  LA CV19-04390 JAK (AGRx), 2022 WL 17253907, at *12 (C.D. Cal. Nov. 15, 2022)

3  ("The amount of attorney's fees and costs permitted in the Settlement Agreement – 33.33%

4  of the Gross Settlement Amount – is substantial but not so disproportionate as to suggest

5  collusion.").    Additionally, although the Settlement Agreement's clear-sailing provision

6  "raise[s] the specter of collusion," *Briseño*, 998 F.3d at 1020, the Court is satisfied that, in

7  light of the absence of other, more concerning "red flags," such as a reverter provision or

8  disproportionate recovery by class counsel, the Settlement Agreement appears to be the

9  product of serious, informed, non-collusive negotiations.  This finding weighs in favor of

10 final approval of the Settlement.

### B.    Rule 23(e)(2)(D): Equitable Treatment Among Class Members

12    The Court next examines the final Rule 23(e)(2) factor, which requires that the

13 "proposal treats class members equitably relative to each other."    Fed. R. Civ.

14 P. 23(e)(2)(D).   "Matters of concern could include whether the apportionment of relief

15 among class members takes appropriate account of differences among their claims, and

16 whether the scope of the release may affect class members in different ways that bear on

17 the apportionment of relief."   Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to

18 2018 amendments.

19    Here, the Allocation Plan provides that the funds distributed to each Class Member

20 will be determined using the same formula.  (ECF No. 86-1 ("Allocation Plan") at 2–3).

21 The formula calculates Class Members' eligibility based on the number of quarters in

22 which they had a positive end-of-quarter balance in their Plan account ("Eligible

23 Quarters").  (*Id.* at 3).  Class Members are entitled to receive a portion of the net settlement

24 award (the total amount less attorneys' fees and other costs) equal to their personal sum

25 total of Eligible Quarters divided by the sum total of Eligible Quarters for all Class

26 Members.  (*Id.*).  The Allocation Plan distinguishes in one respect between "Former

27

28

Participants" and "Current Participants":[2] Former Participants' recovery is subject to a minimum floor of $25.00, a qualification that does not apply to Current Participants. (*Id.* ¶ 4.3). Funds that would be disbursed to Former Participants absent the $25.00 floor are instead to "be allocated to the remaining Settlement Class Members" using the same formula described above. (*Id.*). At hearing, the class counsel clarified that, based on their experience, excluding class members who are entitled to only *de minimus* sums helps minimize settlement administration costs, thereby increasing the total amount of settlement funds available for class members.

"[P]ro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages." *Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at \*6 (N.D. Cal. Mar. 25, 2021). Here, the Settlement Agreement uses the same overall formula to allocate funds to Class Members, with the imposition of a floor for Non-Account Members' recovery. Given the different means and associated costs of distributing funds to Account Members and Non-Account Members, the Court is satisfied that the Settlement Agreement treats Class Members equitably.

## C.    Rule 23(e)(2)(A): Adequacy of Representation

The first Rule 23(e) factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Class representatives are adequate if the named plaintiff and counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class.

---

[2] The Court notes that the Allocation Plan's definition of Current and Former Participants is similar but not identical to the Settlement Agreement's categories of Account and Non-Account Members. *Compare* (Settlement Agreement ¶ 31) *with* (Allocation Plan ¶¶ 3.1, 3.2). To the extent these categories differ, the Court uses the definition provided in the Settlement Agreement, which—per its integration clause—may only be modified upon the parties' written agreement. (Settlement Agreement ¶ 43). The Settlement Plan's definition is also consistent with the notice sent to Class Members.

*Hanlon*, 150 F.3d at 1020.  *See also Kim*, 8 F.4th at 1178 (listing "the experience and views of counsel" as a *Churchill* factor).

In the Preliminary Approval Order, this Court concluded that Plaintiff satisfied the adequacy requirement under Rule 23(a)(4), and appointed Walcheske & Luzi, LLC and Creitz & Serebin, LLP, as Class Counsel and Plaintiff as class representative.  (Prelim. Order at 9–10, 18).  Additionally, Class Counsel has extensive experience prosecuting ERISA class actions.  (Fees Mot. at 11).  *See also* (Prelim. Order at 9); *Kim*, 8 F.4th at 1178.  Accordingly, the Settlement Class is adequately represented, which weighs in favor of approval of the proposed settlement.  *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

### D.    Rule 23(e)(2)(C): Adequacy of the Relief

The third Rule 23(e)(2) factor requires the Court to consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  *See also Kim*, 8 F.4th at 1178 (listing the *Churchill* factors).  In undertaking this analysis, district courts in the Ninth Circuit must compare the settlement amount to the parties' estimated maximum recovery in a successful litigation.  *See Litty v. Merrill Lynch & Co.*, No. CV 14–0425 PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015).

#### 1.    Costs, Risks, and Delay of Trial and Appeal

When considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial," *Hanlon*, 150 F.3d at 1026.  *See also Kim*, 8 F.4th at 1179 (listing "the risk, expense, complexity, and likely duration of further

litigation" as a *Churchill* factor (citation omitted)).    "[T]he Court shall consider the
vagaries of litigation and compare the significance of immediate recovery by way of the
compromise to the mere possibility of relief in the future, after protracted and expensive
litigation."   *Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733-MCE-DB, 2022 WL
4123874, at *4 (E.D. Cal. Sept. 9, 2022) (citation omitted).

Here, continued litigation would likely be costly and substantially delay the potential
relief, if any, that might be obtained absent a settlement.   *See id.* at *5 ("[P]rotracted
litigation would likely come at considerable expense to both parties.").    For example,
Plaintiff represents that, at the time the parties reached a settlement agreement, "the parties
were planning to start a long, arduous, and expensive discovery process." (Final Approval
Mot. at 12).   Plaintiff also notes that ERISA actions are complex and trial results, uncertain.
(*Id.*).   Additionally, Plaintiff contends that Defendant would likely appeal any judgment in
favor of Plaintiff, further delaying (and reducing) Class Members' potential recovery if
litigation were to proceed.   (*Id.* at 13).   In reaching a settlement, Plaintiffs have ensured a
favorable recovery for the class.   *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th
Cir. 2009) (litigation risks weigh in favor of approving class settlement).    Accordingly,
these factors also weigh in favor of approving the settlement.   *See Testone v. Barlean's
Organic Oils, LLC*, No. 3:19-cv-00169-RBM-BGS, 2023 WL 2375246, at *3 (S.D. Cal.
Mar. 6, 2023) (finding as a basis for approving the settlement that the "[p]laintiffs face
significant risks if this case proceeded to trial, while the parties' settlement achieves a
definite result").

### 2.    Effectiveness of Proposed Method of Relief Distribution

Rule 23(e) directs the court to consider the "effectiveness of any proposed method
of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii).   "[T]he goal of any
distribution method is to get as much of the available damages remedy to class members
as possible and in as simple and expedient a manner as possible." *Musgrove v. Jackson
Nurse Pros., LLC*, No. CV 17-6565 FMO (SSX), 2022 WL 18231364, at *6 (C.D. Cal.
June 24, 2022) (quoting 4 Newberg on Class Actions, § 13:53 (5th ed.)).   Further, "[o]ften

1  it will be important for the court to scrutinize the method of claims processing to ensure
2  that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e) advisory committee's note
3  to 2018 amendments.

4      Here, as outlined above, Class Members will receive their portion of the benefits in
5  one of two ways, neither of which requires Class Members to take any action.  Account
6  Members will receive settlement funds via a distribution made directly into their Plan
7  account.  (Settlement Agreement ¶ 31).  Non-Account Members will receive a check via
8  mail.  (*Id.* ¶ 32).  The Court is satisfied as to the sufficiency of the mailing process.  To
9  send notice to Class Members, the Settlement Administrator obtained a list from Defendant
10  containing Class Members' names and mailing addresses.  (ECF No. 87 ¶ 6).  Prior to
11  sending notice, the Settlement Administrator cross-referenced Class Members' addresses
12  with the United States Postal Service ("USPS") National Change of Address database and
13  made updates as appropriate.  (*Id.* ¶ 7).  The Settlement Administrator also updated
14  addresses for 200 Class Members whose notices were returned by the USPS with a
15  forwarding address.  (*Id.* ¶ 9).  For the 1,182 notices returned by the USPS without a
16  forwarding address, the Settlement Administrator performed a skip trace and identified
17  new addresses for 930 Class Members.  (*Id.* ¶ 10).  In total, only approximately 1.03% of
18  notices were undeliverable as of February 13, 2024.  (*Id.* ¶ 11).  The Settlement
19  Administrator also has a case-specific website and hotline for Class Members to utilize.
20  (*Id.* ¶¶ 12–13).

21      Because the proposed method of distributing relief to Class Members utilizes direct
22  deposit or is otherwise based on Defendant's thoroughly cross-checked records, and does
23  not require Participating Class Members take any action to receive their share, the method
24  effectively distributes relief to Class Members and weighs in favor of final approval.

25          3.    Proposed Award of Attorneys' Fees

26      The Court must consider the "terms of any proposed award of attorney's fees,
27  including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Defendant agreed to
28  "take no position" on any motion by Class Counsel for an award of attorneys' fees up to

one-third of the total settlement amount, as well as expenses not to exceed $50,000. (Settlement Agreement ¶ 22). As outlined above, Section I.B.3, and discussed more thoroughly below, Section V.B, although this threshold exceeds the Ninth Circuit's 25% "benchmark" of acceptable attorneys' fees, Class Counsel has moved for a fees award of 25% of the total settlement amount, consistent with Ninth Circuit precedent. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir.2015) (approving fee award of 25%); *Razo*, 2022 WL 4586229, at *10 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."). Accordingly, the proposed attorneys' fee award weighs in favor of final approval.

### 4. Settlement Agreement with Lead Plaintiff

The Court must also evaluate any agreement made in connection with the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), 23(e)(3). The Settlement Agreement provides that Plaintiff may apply to the Court for an incentive award up to $10,000 incentive award; Defendant agreed not to oppose such an application. (Settlement Agreement ¶ 26). Although the Ninth Circuit has not set a benchmark, incentive awards in this Circuit typically range from $2,000 to $10,000, with courts treating $5,000 payments as presumptively reasonable. *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–67 (N.D. Cal. 2015) (citing cases). As the parties' agreement comports with this usual range, the Court concludes that this factor also weighs in favor of final approval.

### E. Remaining *Churchill* Factors

As discussed above through the Rule 23(e)(2) factors, the Court finds that the following *Churchill* factors weigh in favor of final approval: "the strength of the plaintiff's case"; "the risk, expense, complexity, and likely duration of further litigation"; "the risk of maintaining class action status throughout the trial"; and "the experience and views of counsel." *In re Bluetooth*, 654 F.3d at 946 (citation omitted). For the reasons that follow, the remaining *Churchill* factors, on balance, weigh in favor of final approval.

### 1.    Amount Offered in Settlement

As the Ninth Circuit has stated, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625.  Therefore, the fact that a proposed settlement may "only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the $1,475,000 settlement represents approximately 20% of Class Members' total estimated losses.  (Final Approval Mot. at 13–14).  Given the risk of proceeding with litigation discussed above, Section IV.D.1, and comparable class action settlements approved by other courts within the Ninth Circuit, *see, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (finding ERISA class action settlement amount of "roughly one-sixth of the potential recovery . . . fair and adequate"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of "just over 9% of the maximum potential recovery asserted by either party"), the Court concludes that this factor weighs in favor of final approval.  *See also Officers for Just*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

### 2.    Stage of Proceedings and Extent of Discovery

A court's consideration of the stage of the proceedings and extent of discovery essentially "evaluates whether 'the parties have sufficient information to make an informed decision about settlement.'"  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017) (quoting *Linney*, 151 F.3d at 1239).  Here, although the parties began discussing resolution of the case during a relatively early stage of the lawsuit, Plaintiff represents that Class Counsel "conducted substantial investigation and analysis of Plaintiff's claims,

commencing even before the filing of the initial pleading." (Final Approval Mot. at 15). The parties also exchanged initial disclosures, and Defendant produced over 4,000 pages of documents in response to Plaintiff's discovery requests. (ECF No. 67 ¶ 9). The parties engaged in formal mediation with JAMS mediator Robert Meyers on June 7, 2023, which resulted in the Settlement Agreement. (*Id.* ¶ 10).

The exchange of documents through discovery and the presence of an experienced mediator lend support to the conclusion that the parties had sufficient information to make an informed decision about settlement. *See Knapp*, 283 F. Supp. at 833. Furthermore, as discussed above, Section IV.A, the settlement appears to be the result of arm's length negotiations. Because discovery was not extensive prior to mediation and there was no motion practice, however, this factor weighs only slightly in favor of final approval. *Cf. Martinelli*, 2022 WL 4123874, at *7 ("[A]fter seven years of litigation and extensive discovery, the parties have gained a clear view of the strengths and weaknesses of their cases, thus enabling them to engage in meaningful settlement negotiations.").

### 3.    Presence of a Governmental Participant

Plaintiff represents that no governmental entity has participated in the Settlement Agreement or in this litigation. (Final Approval Mot. at 16–17). As required by CAFA, Defendants served notice of the proposed Settlement Agreement to state and federal officials. (*Id.*; ECF No. 88 ¶¶ 2–3). Defendants have not received objections from any governmental officials served in response to the notice. (Final Approval Mot. at 17; ECF No. 88 ¶ 4). Therefore, this factor weighs slightly in favor of final approval. *See In Re Nucoa Real Margarine Litig.*, No. CV 10-00927 MMM (AJWx), 2012 WL 12854896, at *14 (C.D. Cal. June 12, 2012) (finding this factor weighed in favor of final approval when non-participant governmental officials "were notified of the terms of the settlement, . . . and none indicated an intention to object").

### 4.    Class Member's Reactions

Among the *Churchill* factors for district courts to consider is the reaction of the class to the settlement. *See In re Bluetooth.*, 654 F.3d at 946. District courts find "that the

absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016) (citation omitted). Here, direct notice was successful for approximately 99% of Class Members. (ECF No. 87 ¶ 11). According to the Settlement Administrator, no Class Member objected to the Settlement Agreement as of February 13, 2024. (*Id.* ¶ 14). The parties also confirmed that they had not received any objections as of the April 17, 2024, hearing. The Court finds that the absence of objections weighs in favor of final approval. *See, e.g.*, *Spann*, 211 F. Supp. 3d. at 1257–58 (granting final approval where, out of nearly six million class members, only seven individuals objected and objections were without merit); *Anderson v. Sherwin-Williams Co.*, No. ED CV 17-2459 FMO (SHKx), 2020 WL 13584180, at *6 (C.D. Cal. Oct. 23, 2020) ("The lack of objections and limited requests for exclusion support approval of the settlement.").

### F.     Sufficiency of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Although Rule 23 requires reasonable efforts be made to reach all Settlement Class members, it does not require that each Settlement Class member actually receive notice. *See, e.g.*, *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Settlement Administrator has implemented the notice plan previously approved by the Court. (ECF No. 87 ¶¶ 6–11; Prelim. Order at 17). As outlined above, Section IV.D.2, Class Counsel represents that notice was successful for approximately 99% of Class Members. *See* (ECF No. 87 ¶ 11). Accordingly, because the notice effectuated is consistent with the plan the Court previously approved and because Class Counsel has submitted evidence that Class Members have actually received and understood the notice, the Court finds that notice is satisfied under Rule 23(c)(2)(B) and Rule 23(e)(1).

## V.    INCENTIVE AWARDS AND ATTORNEYS' FEES AND COSTS

### A.    Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003). "Courts have discretion to issue incentive awards to class representatives." *Ochinero v. Ladera Lending, Inc*., Case No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334, at *9 (C.D. Cal. July 19, 2021) (citing *Rodriguez*, 563 F.3d at 958–59). Incentive or service awards compensate class representatives for "work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts evaluate these awards relative to the plaintiff's efforts, considering the financial or reputation risk involved, any personal difficulties encountered by the plaintiff, the amount of time spent, the duration of the litigation, and any personal benefit (or lack thereof) enjoyed by the plaintiff. *See In re Apple Inc. Device Performance Litig*., 50 F.4th 769, 786 (9th Cir. 2022); *Knapp*, 283 F. Supp. 3d at 838–39 (approving a $5,000 incentive award in a false advertising case that involved deceptive discounts on a retail website). District courts also consider the "proportionality between the incentive payment and the range of class members' settlement awards." *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

Here, Plaintiff requests a $10,000 incentive payment, which amounts to approximately 0.7% of the total settlement value. (Fees Mot. at 17). Plaintiff represents that he rendered "substantial assistance" to the litigation of this action and "undertook substantial risks associated with the notoriety of being a class representative," including purported risks to his present and future livelihood. (*Id.*). Plaintiff does not identify any particular actions he took in connection with this lawsuit, nor does he represent approximately how much time he spent accomplishing such tasks.

The Court finds the requested incentive award to be higher than reasonable and out of proportion to the effort expended by Plaintiff in this Action. Though the Ninth Circuit has not set a benchmark for the amount of incentive awards, awards ranging from $2,000 and $10,000 have found to be reasonable, with many district courts treating $5,000 as "presumptively reasonable." *See, e.g.*, *Jacobo v. Ross Stores, Inc.*, No. CV 15-4701-MWF (AGRx), 2019 WL 13245093, at *4, *7 (C.D. Cal. Aug. 6, 2019) (approving a $5,000 incentive award for a $4.854 million class action settlement in a deceptive pricing suit); *Knapp*, 283 F. Supp. 3d at 838–39 (accord); *Hale v. Manna Pro Prod., LLC*, No. 2:18-CV-00209-KJM-DB, 2021 WL 4993036, at *8 (E.D. Cal. Oct. 27, 2021) (approving a $7,500 incentive award in a false advertising class action); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, finding that, "in general, courts have found that $5,000 incentive payments are reasonable," and collecting cases). Here, Plaintiff's requested incentive award falls at the outer limit of the range of awards approved by courts in this district. Furthermore, Plaintiff's Motion for Fees does not present the Court with information to support his request for such a high award. At the final approval hearing, counsel for Plaintiff confirmed that Plaintiff was not deposed in this action and that his participation in this lawsuit primarily consisted of reviewing several thousand documents produced in discovery. Counsel for Plaintiff also emphasized that Plaintiff had more "skin in the game" than the typical class action representative because he worked for Defendant for the duration of the litigation. The Court accordingly approves an incentive award in the reduced amount of $5,000.

## B.    Attorneys' Fees

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement." *In re Bluetooth*, 654 F.3d at 941. In the Ninth Circuit, there are two primary methods to

calculate attorney's fees: the percentage-of-recovery method and the lodestar method. *In re Online DVD*, 779 F.3d at 949 (citation omitted). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." *Id*. By contrast, the lodestar method requires "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* (citation omitted). Selection of the benchmark or any other rate must be supported by findings that "take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Here, the Settlement Agreement allows Plaintiffs' counsel to seek an award of attorneys' fees and costs up to approximately one third, or 33.33%, of the Settlement's total value. (Settlement Agreement ¶ 22). In its Motion, Class Counsel seeks $362,500 in attorneys' fees, amounting to about 25% of the total settlement. (Fees Mot. at 11). Class Counsel's request is in line with the 25% benchmark set by the Ninth Circuit. *See In re Online DVD*, 779 F.3d at 949; *Powers*, 229 F.3d at 1256 ("We have . . . established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach.").

The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the quality of class counsel's work; (4) class counsel's reasonable expectations regarding the ultimate fee; (5) the time and effort expended by class counsel; and (6) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048–50. District courts also may, in their discretion, perform a lodestar "cross-check" on counsel's calculation of fees. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more." (collecting cases)).

The circumstances of this case weigh in favor of the reasonableness of the attorneys' fee request. As outlined above, the settlement represents approximately 20% of Class Members' maximum expected recovery and accordingly is fair and adequate; additionally, the Settlement Agreement provides Class Members with immediate relief instead of having them await the results of uncertain litigation. Here, Class Members need take no action to obtain the benefits of the Settlement Agreement, as funds will be disbursed either directly into Class Member's Plan accounts or via check. As Class Counsel has represented, litigation is inherently risky, ERISA litigation in particular can become protracted, and other ERISA class actions have failed at trial. (Final Approval Mot. at 12–13 (collecting cases)). Despite this legal landscape, Class Counsel took this litigation on a contingency-fee basis, assuming the risk of not receiving payment until the case resolves—or of not receiving any compensation at all. (Fees Mot. at 12). *See Russell v. Kohl's Dep't Stores, Inc.*, No. 5:15-cv-01143-RGK-SP, 2019 WL 13109706, at \*2–\*3 (C.D. Cal. Feb. 22, 2019) (finding fees reasonable after counsel obtained "settlement for the class after high-risk contingency litigation that could have resulted in no recovery," and, in a "nearly-identical class action . . . against the same defendant, the Ninth Circuit affirmed . . . summary judgment for [the defendant] for alleged advertising misrepresentations"). Class Counsel also specializes in ERISA class action litigation. (ECF No. 67 ¶¶ 13–20). Finally, no Class Member has objected to the fees sought—which, indeed, are less than the maximum permissible fees disclosed to Class Members in the notice. *See Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818, at \*5 (C.D. Cal. Oct. 24, 2017) (holding "that the lack of significant objections to the requested fees justifies an award of one-third of the settlement fund").

As the Court concludes that the requested fees are reasonable, it GRANTS Plaintiff's request as to the requested attorneys' fees.[3]

---

[3] Given the *Vizcaino* factors analysis, the Court exercises its discretion to decline a lodestar cross check. *See Farrell*, 827 F. App'x at 630 (finding no abuse of discretion in "using the percentage-of-recovery method to calculate fees and refusing to conduct a lodestar

## C.    Costs and Expenses

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1048 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994)).  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (citation omitted).

Class Counsel has submitted an itemized list of costs amounting to $32,879.62. (ECF No. 82 ¶ 26).   These costs consist of expert consultant charges, travel costs, administrative expenses, mediation expenses, and court costs.  (*Id.*).  These costs appear reasonable and typical of other similar actions.  *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (approving costs, including mediator, court fees, depositions in a wage and hour class action); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454

---

crosscheck" when district court considered the reasonableness factors).    In these circumstances, performing a lodestar crosscheck could discourage early resolution of cases.  *See Vizcaino,* 290 F.3d at 1050 n.5 ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief. . . .    [I]t is widely recognized that the lodestar method *creates incentives for counsel to expend more hours than may be necessary* on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." (emphasis added)); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *49 (N.D. Cal. Jan. 26, 2007) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *10 n.63 (N.D. Cal. Dec. 6, 2017) ("[Counsel] may do unnecessary work or delay settlement to make sure that the multiplier needed to get to their percentage fee does not appear to be out of line."), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).

(E.D. Cal. 2013) (noting that frequently reimbursed costs include items like mail charges and mediation fees).  Thus, the Court GRANTS Class Counsel's request for costs.

## VI.    CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiff's Unopposed Motion for Final Approval and approves settlement of the action between Plaintiff and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate and directs the Parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. **GRANTS** an award to Class Counsel for $362,500 in attorneys' fees and $32,879.62 in costs to be paid to Class Counsel;

3. **GRANTS** an award to Plaintiff in the amount of $5,000, in exchange for a general release of his individual claims, and finds that this amount is warranted and reasonable; and

4. **DISMISSES** Plaintiff's case with prejudice, in accordance with the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED:   July 31, 2024

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE